UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

In re:

TOWN HOSPITALITY GROUP, INC.,

Debtor.

Chapter 11
Case No.

**DEBTOR'S EMERGENCY MOTION
FOR AUTHORITY TO USE CASH COLLATERAL
[Emergency Determination Requested by July 16, 2020]**

Debtor Town Hospitality Group, Inc. (the "Debtor") hereby moves this Court for entry of an order pursuant to Sections 361 and 363(c)(2) of the Bankruptcy Code, and MLBR 4001-2, authorizing the use of the cash collateral of secured creditor Avidia Bank ("Avidia").  **As set forth below, the Debtor will need to pay certain ongoing expenses, including wages by Thursday, July 16, 2020.  Accordingly, the Debtor requests, pursuant to MLBR 9013-1(g), emergency determination of this Motion.**  In support of this Motion, the Debtor respectfully represents:

### I.      Introduction

1.      On July 14, 2020 (the "Petition Date"), the filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court.

2.      Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its businesses and financial affairs as a debtor-in-possession.  No creditors' committee has yet been appointed in this case.

## II.    Background

3.    The Debtor is a Massachusetts corporation that owns and operates a 15-room guest house known as the Waterford Inn and restaurant called Spindlers, located at 386 Commercial Street, Provincetown, Massachusetts. The restaurant and guest house are situated on property owned by the Debtor's affiliate, THG Properties LLC ("THG"), which is currently a Chapter 7 debtor before this Court.

4.    Notwithstanding the economic difficulties arising from COVID-19 and the state mandated shutdown and subsequent limitations, the Debtor has reopened and has been operating and meeting its current obligations as they come due. In addition, the Debtor has received relief through a PPP loan, which it has been using to pay its wages and rent.

5.    Further, Avidia, which refuses to push off the secured party sale, is currently receiving adequate protection payments in the THG Chapter 11 case that covers ALL debt owed to Avidia by THG and the Debtor. Those payments are funded solely by the rents paid by the Debtor. Significantly, it was Avidia that insisted on the entry of a cash collateral order in the THG case that required THG to ensure that the Debtor herein met its obligations to Avidia. Notwithstanding that THG and the Debtor have fulfilled all such obligations, Avidia would not continue the sale.

6.    The Debtor filed this case to avoid the secured party sale and, along with THG, to provide the Debtor with sufficient time within which to consummate a refinancing of the Property that would pay off the obligations owed to Avidia Bank.

### III. The Debtor's Creditors

**Secured Debt**

**Avidia Bank**

7. The Debtor's senior secured creditor is Avidia Bank. The Debtor is the primary obligor pursuant to a Promissory Note dated March 31, 2017, which has a current balance of approximately $150,000.

8. In addition, the Debtor has guaranteed the obligations of THG to Avidia, which are set forth in two Promissory Notes, dated March 31, 2017 in the original principal amounts of $1,875,000.00 and $1,125,000.00 (the "THG Notes"), respectively. The THG Notes are secured by first priority mortgages on the THG real property. According to a recent appraisal of the THG property, the value far exceeds the THG Notes.

CHTD Company/PayPal

9. The Debtor is also indebted to Paypal in the amount of approximately $65,000, pursuant to a short-term loan secured by a lien on substantially all assets. The lien was perfected by a UCC financing statement filed on October 22, 2019. The Trustee believes, however, that Paypal is wholly unsecured, given the debt owed to Avidia.

**Priority Tax Debt**

10. The Debtor is obligated to the Massachusetts Department of Revenue in the approximate amount of $207,672, for unpaid meals taxes for 2017 and 2018, and to the Internal Revenue Service, in the approximate amount of $245,000, for unpaid payroll taxes (employer portion only) for 2017 and 2018. The Debtor has been in a payment plan with both taxing authorities. In addition, the Debtor has remained current on all subsequent tax obligations.

**General Unsecured Debt**

11. The Debtor has approximately $48,000.00 in general unsecured debt, which consists of promissory notes in favor of private lenders in the approximate amount of $811,000, an EIDL loan from the SBA in the amount of $150,000, and unpaid vendors in the amount of $48,000. (This does not include a PPP loan which the Debtor expects to be forgiven.)

## IV.    Relief Requested

12. Section 363(c)(2) of the Code provides that, absent consent by the secured party, "The trustee (here, the debtor in possession) may not use, sell or lease cash collateral under paragraph (1) of this subsection unless: (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." Section 363(e) of the Code requires that the court condition the use of cash collateral as is necessary to provide adequate protection to the secured creditor.

13. Section 361 of the Code provides that adequate protection may be provided by (1) making "a cash payment or periodic cash payments to [an] entity, to the extent that the stay under Section 362 of this title, use, sale, or lease under section 363 of this title . . . results in a decrease in the value of [the] entity's interest in such property," (2) "providing to [an] entity an additional or replacement lien to the extent that such ... use . . . results in a decrease in the value of [the] entity's interest in such property" or (3) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." *11 U.S.C. §§ 361(1), (2), (3).*

14. What constitutes adequate protection is determined on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The purpose is to protect a secured creditor from

diminution in value of its interest in the collateral during the period of use by the Debtors. *See In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v. Production Credit Ass'n & Fed. Land Bank*, 104 B.R. 824, 827-28 (E.D. Mich. 1989); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

15. In the present case, the Debtor asserts that any cash collateral used by the Debtor will be used solely to maintain operations and to keep the THG Property maintained, and thus reduce the chance of any possible diminution in value of the Property. However, in addition, the Debtor also proposes to grant to Avidia the following as additional adequate protection:

a. The Debtor shall grant to Avidia a continuing replacement lien and security interest in the post-petition accounts receivable generated from the building leases to the same validity, extent and priority that it would have had in the absence of the bankruptcy filing; and

b. The Debtor shall remain within its Budget, attached hereto as Exhibit A, within an overall margin of 10 percent.

c. The Debtor shall continue to make its rent payments to THG, who will in turn continue to make monthly adequate protection payments to Avidia in the amount of the monthly interest payments on the THG Notes.

d. The Debtor shall make monthly interest payments on account of its loan obligation to Avidia (approximately $2,111.00) and its credit card obligation to Avidia (approximately $2,560.00) per month, by the 5th day of each month.

16. The foregoing proposal more than adequately protects Avidia.

## V. <u>Notice</u>

17.     No trustee, examiner, or official committee has been appointed in this Chapter 11 case. Copies of this Motion, together with copies of a proposed Order hereon and of the Emergency Motion, have been furnished by ECF or overnight mail to: (a) the Office of the United States Trustee for this district; (b) the Debtor's 20 largest unsecured creditors as reflected in the list filed by the Debtor pursuant to Fed. R. Bankr. P. 1007(d); (c) the Internal Revenue Service; (d) the Massachusetts Department of Revenue; (e) the Massachusetts Department of Unemployment Assistance; (f) the Debtor's secured creditors as reflected in the Debtor's schedules and statements filed in this case (collectively the "Notice Parties"). The Debtor submits that such service constitutes sufficient notice of this Motion, the proposed Order hereon and the relief sought hereunder in the particular circumstances.

## VI. <u>Conclusion</u>

WHEREFORE, the Debtor respectfully requests that this Court: (a) enter an order, in a form to be provided to the Court, authorizing the Debtor to use cash collateral in accordance with the Budget; and (b) grant such other and further relief as this Court may deem just and proper.

Respectfully submitted this 14th day of July, 2020.

                        TOWN HOSPITALITY GROUP, INC.,

                        By its attorneys,

                        */s/ David B. Madoff*
                        David B. Madoff (BBO#552968)
                        Steffani M. Pelton (BBO#666470)
                        MADOFF & KHOURY LLP
                        124 Washington Street
                        Foxboro, MA 02035
                        (508) 543-0040
                        madoff@mandkllp.com